1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RICHARD STIEFEL,<br><br>                      Plaintiff,<br>    vs.<br><br>BECHTEL CORPORATION and<br>DOES 1-100, inclusive,<br><br>                    Defendants. | CASE NO. 06-CV-01414-H (WMC)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

On July 13, 2006, defendant Bechtel Corporation ("Defendant") removed San Diego County Superior Court case <u>Stiefel v. Bechtel</u>, case number GIN053461, to this Court.  (Doc. No. 1.)  On December 27, 2006, plaintiff James Richard Stiefel ("Plaintiff") filed a first amended complaint ("FAC").  (Doc. No. 21.)  On January 11, 2007, Defendant filed a motion to dismiss Plaintiff's FAC.  (Doc. No. 22.)  On February 12, 2007, Plaintiff filed an opposition.  (Doc. No. 25.)  On February 16, 2007, Defendant filed a reply.  (Doc. No. 26.)

The Court held a hearing on Defendant's motion to dismiss on February 26, 2007.  Attorney Marcus Jackson represented Plaintiff and attorney Thomas McInerney represented Defendant at the hearing.  On February 27, 2007, the Court filed a scheduling order regarding supplemental briefing. (Doc. No. 28.)  On March 9, 2007, Defendant filed a supplemental brief in support of its motion to dismiss. (Doc. No. 32.)

1  On March 19, 2007, Plaintiff filed a supplemental opposition to Defendant's motion to

2  dismiss.  (Doc. No. 34.)  On March 21, 2007, Defendant filed a motion requesting the

3  Court take judicial notice of certain facts.  (Doc. No. 35.)  On March 28, 2007, Plaintiff

4  filed an opposition brief.  (Doc. No. 37.)

5          For the following reasons, the Court **DISMISSES WITHOUT PREJUDICE**

6  Plaintiff's disability discrimination and retaliation claims to the extent that they are

7  based on the ADA (claims two and three).  The Court **GRANTS WITH PREJUDICE**

8  Defendant's motion to dismiss Plaintiff's claims for wrongful termination in violation

9  of public policy (claim one), disability discrimination and retaliation to the extent that

10  they are based on the California Fair Employment Housing Act (claims two and three),

11  violations of sections 98.6, 1102.5, 132a, 6402, 6403, and 6404 of California's Labor

12  Code (claim four), negligent supervision (claim five), and intentional infliction of

13  emotional distress (claim six).   The Court **GRANTS WITHOUT PREJUDICE**

14  Defendant's motion to dismiss Plaintiff's disability discrimination claim under the

15  Rehabilitation Act (claim two),  and Plaintiff's claims for violations of sections 6310

16  and 6311 of California's Labor Code.

17                                            **Background**

18          Plaintiff began working for Defendant at the San Onofre Nuclear Generating

19  Station ("SONGS") as an ironworker in May 2004.[1]  (FAC ¶ 7.)  Defendant performs

20  services at SONGS pursuant to a contract it has with Southern California Edison

21  ("SCE").  (Id. ¶ 4.)  In November 2005, Plaintiff reported to personnel employed by

22  Defendant the names of people involved with an emergency boom lift malfunction.  (Id.

23  ¶¶ 9-14.)  In December 2005, Plaintiff brought to the attention of his supervisor a

24  cracked weld in a system designed to remove radioactive material from the containment

25

26          [1] Defendant alleges that Plaintiff was employed by Bechtel Construction
    Company, a subsidiary of Defendant, and states that it is not waving its right to later
27  contest the fact that Plaintiff sued the wrong entity. (Def. Bechtel Corporation's Mem.
    P. & A. Supp. Mot. Dismiss, at 1 & n.1.)  Since the Court must accept all well-pleaded
28  factual allegations as true for purposes of a motion to dismiss, the Court accepts that
    Plaintiff was employed by Defendant for purposes of this order.

building which housed the nuclear reactor.  (<u>Id.</u> ¶ 15.)  Plaintiff injured his left thumb while working for Defendant on January 31, 2006.  (<u>Id.</u> ¶¶ 16, 17.)  Plaintiff was laid off by Defendant in March 2006.  (<u>Id.</u> ¶ 28.)

Subsequently, Plaintiff filed a charge of discrimination with the California Department of Fair Employment and Housing.  (<u>Id.</u> ¶ 31.)  In June 2006, Plaintiff filed a complaint in San Diego County Superior Court for wrongful termination in violation of public policy, failure to accommodate a disability, retaliation, violations of California's Labor Code, negligent supervision, and intentional infliction of emotional distress.  (Compl. ¶¶ 1-74.)  Defendant removed the suit to federal court.  (Notice Removal, at 1-4.)

On December 13, 2006, the Court granted Plaintiff leave to amend his complaint.  (Doc. No. 19.)  On December 27, 2006, Plaintiff filed a FAC alleging wrongful termination in violation of public policy (claim one), disability discrimination under the California Fair Employment Housing Act, section 12940 et seq. of the California Labor Code ("FEHA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 701 et seq. (claim two), retaliation under FEHA and the ADA (claim three), violations of California's Labor Code (claim four), negligent supervision (claim five), and intentional infliction of emotional distress (claim six).  On January 11, 2007, Defendant filed a motion to dismiss Plaintiff's entire suit.  (Def. Bechtel Corporation's Notice Mot. and Mot. Dismiss, at 1.)

On February 26, 2007, the Court held a hearing on Defendant's motion to dismiss.  At the hearing, Plaintiff's attorney Marcus Jackson stated that he did not have a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") regarding his ADA claims.

## Discussion

### A.   Judicial Notice

Defendant requests the Court take judicial notice of the fact that SONGS is located on a federal enclave.  Plaintiff states that he does not oppose Defendant's

1  request because the evidence Defendant submitted demonstrates that the Court may

2  properly take judicial notice that SONGS is a federal enclave.

3      A matter that is properly the subject of judicial notice may be considered along

4  with the complaint when deciding a motion to dismiss for failure to state a claim.  See

5  MGIC Indem. Corp. v. Weisman, 803 F2d 500, 504  (9th Cir. 1986).  Judicial notice

6  may be taken of facts not subject to reasonable dispute in that they are "generally

7  known" in the community or "capable of accurate and ready determination by reference

8  to sources whose accuracy cannot be reasonably questioned."   See Fed. R. Evid.

9  201(b).

10      In 1939, California consented to allow the United States to acquire by purchase

11  or condemnation any track of land within the state for the purpose of erecting forts or

12  other needful buildings.  See Cal. Stats. 1939, ch. 710, § 1, p. 2231 (Decl. Thomas M.

13  McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. D).  In 1942, the United States

14  acquired Camp Pendleton through condemnation.  See Law Enforcement at San Onofre

15  Nuclear Generation Plant, 1 Op. Off. Legal Counsel 204, 204-05 (1977); see also Letter

16  from James Forrestal, Under Secretary of the Navy, to Earl Warren, California

17  Governor (Sept. 8, 1943) (on file in Official Recorder's Office of San Diego County,

18  California) (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex.

19  E) ("The United States of America became vested with valid title to certain lands in San

20  Diego County, California on December 31, 1942 . . . . [F]or the establishment of Camp

21  Joseph H. Pendleton . . . .").

22      In 1963, Congress authorized the Secretary of the Navy to grant an easement

23  allowing Southern California Edison Company and San Diego Gas and Electric

24  Company to construct, operate, and maintain a nuclear electric generating station in

25  Camp Pendleton Naval Reservation.  See Act of July 30, 1963, Pub. L. No. 88-82, 77

26  Stat. 115.  The U.S. Department of Justice has confirmed that SONGS is the nuclear

27  generating plant authorized by Congress.  See Law Enforcement at San Onofre Nuclear

28  Generation Plant, supra, 1 Op. Off. Legal Counsel at 204-05 ("Camp Pendleton was

1    acquired by the United States in 1942 through condemnation.  Jurisdiction over the land
2    was ceded by the State of California and accepted by the Secretary of the Navy on
3    behalf of the United States.  Thus, Camp Pendleton is within the exclusive territorial
4    jurisdiction of the United States . . . .  The San Onofre power plant is located within the
5    reservation on a 60-year easement granted by the Navy Department in 1964 pursuant
6    to Pub. L. 88-82, 77 Stat. 115.") (internal citations omitted); see also Cooper v.
7    Southern California Edison Co., 170 Fed. Appx. 496, 497 (9th Cir. 2006)[2] ("SONGS
8    is located within a federal enclave, acquired by the United States in 1941 when it
9    established Camp Pendleton.") (citing United States v. Fallbrook Pub. Util. Dist., 110
10   F. Supp. 767, 771 (S.D. Cal. 1953)); Snow v. Bechtel Const. Inc., 647 F. Supp. 1514,
11   1515-16 (C.D. Cal. 1986) (taking judicial notice of the fact that SONGS is located
12   within a federal enclave).

13          Furthermore, it is generally known in the community that Camp Pendleton is a
14   United States Marine Corp Base under the jurisdiction of the federal government.
15   Accordingly, the Court takes judicial notice of the fact that SONGS is located within
16   the federal enclave of Camp Pendleton, which was acquired by the United States no
17   later than December 31, 1942.

18   **B.    Legal Standards For A Motion To Dismiss**

19          Defendant has moved to dismiss Plaintiff's entire suit against it under Rule
20   12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which
21   relief can be granted.  A motion to dismiss for failure to state a claim pursuant to section
22   12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Conley v. Gibson,
23   355 U.S. 41, 45-46 (1957).  Rule 12(b)(6) permits dismissal of a claim either where that
24   claim lacks a cognizable legal theory, or where insufficient facts are alleged to support
25   plaintiff's theory.  See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.
26   1990).  In considering the sufficiency of a complaint under Rule 12(b)(6), courts cannot

27   _____

28          [2] Unpublished decisions of the ninth circuit issued before January 1, 2007 may
     be cited by courts in the ninth circuit for factual purposes.  See Ninth Circuit Rule
     36-3(c)(ii).

1  grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove
2  no set of facts in support of his claim which would entitle him to relief."  Id. (citing
3  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In resolving a Rule 12(b)(6) motion, the
4  court must: (1) construe the complaint in the light most favorable to the plaintiff; (2)
5  accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff
6  can prove any set of facts to support a claim that would merit relief.  See Cahill v.
7  Liberty Mut. Ins. Co., 80 F.3d 336, 337–338 (9th Cir. 1996).

8       Dismissal is proper, however, if a complaint is vague, conclusory, and fails to set
9  forth any material facts in support of the allegation.  See North Star Intern. v. Arizona
10  Corp. Com'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, a court may not "supply
11  essential elements of the claim that were not initially pled."  Ivey v. Bd. of Regents of
12  the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  If a complaint is found to fail
13  to state a claim, the court should grant leave to amend unless it determines that the
14  pleading could not possibly be cured by the allegation of other facts.  See Doe v. United
15  States, 58 F.3d 494, 497 (9th Cir. 1995).

16       As a general matter, a court may only consider the pleadings and judicially
17  noticed facts in deciding a 12(b)(6) motion.  See Hal Roach Studios, Inc. v. Richard
18  Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1990).  Material that is properly attached
19  to the complaint may properly be considered for purposes of a motion to dismiss
20  without converting the motion into one for summary judgment.  See id. at 1555 n.19.
21  Also, a court may consider documents whose contents are alleged in a complaint and
22  whose authenticity no party questions, but which are not physically attached to the
23  plaintiff's pleading.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  This
24  doctrine extends to situations in which the plaintiff's claim depends on the contents of
25  a document and the defendant attaches the document to its motion to dismiss, even
26  though the plaintiff does not explicitly allege the contents of that document in the
27  complaint.  See id.
28  / / /

**C.    ADA Claims**

Plaintiff stated at oral argument, and again in his supplemental briefing, that he does not have a right-to-sue letter from the EEOC regarding his ADA claims.  "An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court."  Josephs v. Pacific Bell, 443 F.3d 1050, 1061 (9th Cir. 2006).  The ADA incorporates the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964, including the requirement that a "right-to-sue" letter be obtained before a plaintiff brings an ADA suit.  See 42 U.S.C. §§ 12117(a), 2000e-5(f)(1); see also Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (affirming dismissal of Title VII suit based on failure to obtain right-to-sue letter).  Accordingly, the Court dismisses without prejudice Plaintiff's disability discrimination and retaliation claims to the extent that they are based on the ADA.

**D.    Rehabilitation Act Claims**

Plaintiff's second cause of action alleges disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 et seq.  (FAC ¶¶ 41-48.)  Defendant argues that section 503 of the Rehabilitation Act, 29 U.S.C. § 793, entails no private right of action. Plaintiff concedes that there is no private right of action under section 503.

Defendant also argues that section 504 of the Rehabilitation Act, 29 U.S.C. § 794, only permits a right of action against an entity receiving federal financial assistance, that Plaintiff has failed to allege that Defendant is an entity receiving federal financial assistance, and that, in fact, Defendant does not receive federal financial assistance for its work at SONGS.  Section 504 prohibits any program or activity receiving federal financial assistance from excluding an individual from participating in the program or activity, denying an individual the benefits of the program or activity, or subjecting an individual to discrimination, solely by reason of the individual's disability.  See 29 U.S.C. § 794(a).  Individuals aggrieved under § 794 by an act of a recipient of federal assistance are provided a private right of action.  See id.

§ 794a(a)(2).

Plaintiff alleges in his FAC that he suffered discrimination by Defendant based on his disability.  (FAC ¶ 44.)  Plaintiff also alleges that Defendant was a subcontractor of SCE working on various projects at SONGS where it <u>may</u> have been a recipient of federal funding.  (<u>Id.</u> ¶ 4 (emphasis added).)  In evaluating Plaintiff's allegations for purposes of a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  <u>See</u> <u>Cahill</u>, 80 F.3d at 337–338.  Even under these standards, the Court concludes that Plaintiff has not adequately plead that Defendant is the recipient of federal assistance, which is required to state a claim under section 504.  Accordingly, the Court grants without prejudice  Defendant's motion to dismiss Plaintiff's disability discrimination claim under the Rehabilitation Act.

**E.      Federal Enclave Doctrine**

Defendant alleges that Plaintiff's claims for wrongful termination in violation of public policy (claim one), disability discrimination under FEHA (claim two), retaliation under FEHA (claim three), violations of California's Labor Code (claim four), and intentional infliction of emotional distress (claim six) are barred by the federal enclave doctrine.

Article I, Section 8, Clause 17 of the United States Constitution provides that Congress shall have the power to exercise exclusive legislation over all places purchased by the consent of the legislature of the state in which the same shall be.  This constitutional provision permits the continuance of those state laws existing at time of surrender of sovereignty, except insofar as they are inconsistent with the laws of the United States or with the governmental use for which the property was acquired, unless they are abrogated by Congress, so that no area may be left without a developed legal system for private rights.  <u>See</u> <u>Pacific Coast Dairy v. Department of Agriculture of Cal.</u>, 318 U.S. 285, 294 (1943); <u>James Stewart & Co. v. Sadrakula</u>, 309 U.S. 94, 99-100 (1940).  Because the federal government has exclusive jurisdiction, such laws become

federal laws, although having their origin in the laws of the state.  See James Stewart & Co., 309 U.S. at 100; Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2006 ("Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'"); Mater v. Holley, 200 F.2d 123, 124 (5th Cir. 1952); see also 91 C.J.S. United States § 15 (2006).

Only state laws in effect at the time of cession or transfer of jurisdiction, however, can continue in operation.  See James Stewart & Co., 309 U.S. at 100.  Laws subsequently enacted by the state are inapplicable in the federal enclave unless they come within a reservation of jurisdiction or are adopted by Congress.  See id.; Paul v. United States, 371 U.S. 245, 268 (1963); see also 91 C.J.S. United States § 15.

The Court has taken judicial notice of the fact that SONGS is located within the federal enclave of Camp Pendleton, which was acquired by the federal government no later than December 31, 1942.  Defendant argues that all or part of Plaintiff's first, second, third, fourth, and sixth claims are based on California laws enacted after the transfer of jurisdiction of the area encompassing SONGS to the federal government, and therefore those claims must be dismissed.  Plaintiff counters, relying on Taylor v. Lockheed Martin Corp., 78 Cal. App. 4th 472, 480 (2000), and Snow v. Bechtel Const. Inc. 647 F. Supp. 1514, 1521 (C.D. Cal. 1986),[3] that since he was at home when he learned about Defendant's refusal to re-employ him, the federal enclave doctrine does not apply.

Plaintiff alleges that Defendant was at all relevant times a subcontractor of SCE working on various projects at SONGS.  (FAC ¶ 4.)  He alleges that he began working at Defendant on or about May 1, 2004 in the facilities department of SONGS, and was moved to the Unit 1 decommissioning project at SONGS on or about November 2005.  (Id. ¶¶ 7-9.)  Plaintiff alleges that in November 2005, he was involved in an incident where he was stuck on a boom lift at SONGS, which he reported to personnel employed

---

[3] Plaintiff also cites an out of circuit, district court case to support his argument. The Court declines to address this non-binding case.

at Defendant (id. ¶¶ 9-14), and that in December 2005 he reported a problem with a system used to remove radioactive material as SONGS. (Id. ¶ 15.) Plaintiff alleges that in January 2006 he injured his thumb while working.  (Id. ¶ 16.)  He alleges that in February 2006, he met with SCE employees at his work area regarding SCE's safety department reviewing the circumstances of his injury.  (Id. ¶ 21.)  He alleges that at some point Defendant's site manager met with another employee of Defendant at the site manager's office, and that the site manager told the employee that Plaintiff was a trouble maker.  (Id. ¶ 23.)  He alleges that beginning on February 16, 2006, and for the next three weeks, Defendant assigned him work requiring the use of both hands despite the fact that he provided his foreman and a safety department representative a note from his orthopedist stating he was not to use his left hand. (Id. ¶¶ 25-27.)   Plaintiff alleges that on March 6, 2006, Defendant laid him off, and that in late October 2006, he learned that defendant refused to put him back to work, claiming that no light duty work was available.  (Id. ¶¶ 28-30.)

   In Taylor, the court rejected the argument that the plaintiff's wrongful termination claim should not be barred by the federal enclave doctrine because Plaintiff was terminated while he was on paid suspension and therefore not working on the enclave.  See Taylor, 78 Cal. App. 4th at 481.  The Court noted that "[a]s the employee of a contractor operating on the enclave, [plaintiff's] claims are governed by the enclave's law, rather than by state law."  See id. (citing Hancock v. Train, 426 U.S. 167, 178-180 (1976)).  The Snow court concluded that the federal enclave doctrine precluded the plaintiff's wrongful termination claim because "all pertinent events occurred on a federal enclave."  See Snow, 647 F. Supp. at 1521.  The Court concludes that all the pertinent allegations in Plaintiff's FAC regarding Plaintiff's claims for wrongful termination in violation of public policy, disability discrimination under FEHA, retaliation under FEHA, violations of California's Labor Code, and intentional infliction of emotional distress allegedly occurred at SONGS, and therefore these claims are subject to the federal enclave doctrine.

Since these claims are subject to the federal enclave doctrine, any of the claims based on state law enacted after December 31, 1942, the date the Court took judicial notice that the federal government obtained jurisdiction over Camp Pendleton, are inapplicable in the federal enclave unless they come within a reservation of jurisdiction by California or are adopted by Congress.  See Paul, 371 U.S. at 268; Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 181 n.1 ("Direct state regulation of federal facilities is allowed only to the extent that Congress has clearly authorized such regulation.").

Plaintiff's first claim is a state law claim for wrongful termination in violation of public policy.  The common law claim for wrongful termination in violation of public policy was first recognized in California, at the earliest, in 1959.  See Taylor, 78 Cal. App. 4th at 486 (barring wrongful termination in violation of public policy claim based on California law in suit based on events occurring in federal enclave).  Plaintiff does not argue that a claim for wrongful termination in violation of public policy comes within a reservation of jurisdiction or that it was adopted by Congress.  Therefore this claim is barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss this claim.

Plaintiff's second and third claims, for failure to accommodate and retaliation, are based, in part, on FEHA, section 12940 et seq. of California's Government Code.  FEHA was not enacted until 1980.  See Taylor, 78 Cal. App. 4th at 483 (citing Cal. Stats. 1980, ch. 992, § 4, pp. 3148-3149).  "The predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959." Id. (citing former Cal. Labor Code, § 1410 et seq., added by Cal. Stats. 1959, ch. 121, § 1, pp. 1999-2005).  Plaintiff does not argue that these claims come within a reservation of jurisdiction by California or that FEHA was adopted by Congress.  Therefore Plaintiff's second and third claims, to the extent that they are based on FEHA, are barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss these claims.

Plaintiff's sixth claim, for intentional infliction of emotional distress, was first

recognized by California courts after the Restatement of Torts was amended in 1947 to recommend allowing a claim based on the violation of a plaintiff's interest in peace of mind without the necessity of showing the elements of any traditional torts such as assault, battery, false imprisonment, trespass, defamation, or invasion of privacy.  <u>See</u> 5 B.E. Witkin, <u>Summary Of California Law: Torts</u>, §§ 449-50 (10th ed.2005) (citing <u>State Rubbish Collectors Assn. v. Siliznoff</u>, 38 Cal. 2d 330, 336 (1952); <u>Bowden v. Spiegel</u>, 96 Cal. App. 2d 793, 795 (1950); <u>Richardson v. Pridmore</u>, 97 Cal. App. 2d 124, 129 (1950)).  Plaintiff does not argue that a claims for intentional infliction of emotional distress comes within a reservation of jurisdiction by California or that the tort was adopted by Congress.  Therefore Plaintiff's claim for intentional infliction of emotional distress is barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss this claim.

Plaintiff's fourth cause of action alleges violations of sections 98.6, 1102.5, 132a, 6310, 6311, 6402, 6403, and 6404 of California's Labor Code.  Section 98.6 of the Labor Code was adopted in 1978.  <u>See</u> Cal. Stats. 1978, ch. 1250, § 1, p. 4064.  Section 98.6 of California's Labor Code was derived from former section 1196 of California's Labor Code, which was adopted by the California Legislature in 1937.  <u>See</u> Cal. Stats. 1937, ch. 90, § 1196, p. 217.  Prior to the 1978 statute, however, former section 1196 of California's Labor Code simply made it a misdemeanor for anyone to discriminate against an employee for testifying in an investigation of California's Labor Commissioner.  <u>See</u> <u>id.</u>  Plaintiff does not allege in the FAC that he was discriminated against for offering testimony to the Labor Commissioner.  Rather, his claim pursuant to section 98.6 of the Labor Code is allegedly based on unsafe working conditions and retaliation for reporting those conditions.  Section 98.6 prohibits discrimination in the workplace based on various reasons, including termination because of "the exercise by the employee . . . on behalf of himself, herself, or others of any rights afforded him or her."  <u>See</u> <u>Grinzi v. San Diego Hospice Corp.</u>, 120 Cal. App. 4th 72, 86 (2004).  "Any rights," for purposes of a suit brought under section 98.6, has been interpreted as those

06cv1414

rights otherwise protected by the Labor Code.  See id.  This much more expansive language of section 98.6 relied upon by Plaintiff was not added by the California Legislature until 1978.  Furthermore, Plaintiff does not argue that a claim under section 98.6 comes within a reservation of jurisdiction by California or that this section was adopted by Congress.   Therefore Plaintiff's claim pursuant to section 98.6 of California's Labor Code is barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss this claim.

Section 1102.5 of California's Labor Code was adopted in 1984.  See Cal. Stats. 1984, ch. 1083, § 1.  Plaintiff does not argue that a claim under section 1102.5 comes within a reservation of jurisdiction by California or that this section was adopted by Congress.  Therefore Plaintiff's claim pursuant to section 1102.5 of California's Labor Code is barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss this claim.

Section 132a of California's Labor Code, which in its current form prohibits discrimination against workers injured in the course of their employment, was adopted in 1972.  See Cal. Stats. 1972, ch. 874, § 1, p. 1545.  Although a previous version of § 132a of California's Labor code was adopted in 1941, that version did not address discrimination by an employer based on an employee's injury, but rather prohibited an employer from discriminating against an employee for filing an application or complaint with, or testifying in an investigation held by, the Labor Commissioner.  See Cal. Stats. 1941, ch. 401, § 1, p. 1686.  Furthermore, Plaintiff does not argue that a claim under section 132a comes within a reservation of jurisdiction by California or that this section was adopted by Congress.  Therefore Plaintiff's claim pursuant to section 132a of California's Labor Code is barred by the federal enclave doctrine.  Accordingly, the Court grants with prejudice Defendant's motion to dismiss this claim.

Sections 6310 and 6311 of California's Labor Code were adopted in 1973.  See Cal. Stats. 1973, ch. 993, §§ 59, 61, p. 1930.  Section 6311 was derived from former section 6604 of the Labor Code, adopted by the California Legislature in 1949.  See

Cal. Stats. 1949, ch. 1060, § 1, p. 1968.  Therefore, both of these California statutes are inapplicable in SONGS unless they come within a reservation of jurisdiction or were adopted by Congress.

Plaintiff argues, relying on <u>Taylor</u>, that sections 6310 and 6311 of California's Labor Code have been approved by Congress for enforcement within a federal enclave. Sections 6310 and 6311 are part of the California Occupational Safety and Health Act, Cal. Labor Code §§ 6300 et seq., which was enacted in 1973, and approved by the federal Occupational Safety and Health Administration in 1975.  <u>See</u> <u>Taylor</u>, 78 Cal. App. 4th at 484.  In <u>Taylor</u>, the court held that a plaintiff was able to bring a claim for alleged violations of the whistleblower provisions of subsections (a) and (b) of section 6310[4] occurring on a federal enclave because the Secretary of Labor, as authorized by Congress, approved a California Occupational Safety and Health Administration ("Cal/OSHA") plan to allow state safety regulation of federal enclaves when the responsible federal agency does not claim exclusive jurisdiction.  <u>See</u> <u>id.</u> at 483-85 (citing Cal. Labor Code § 6303 (defining "place of employment" within California as "any place, and the premises appurtenant thereto, where employment is carried on, except a place the health and safety jurisdiction over which is vested by law in, and actively exercised by, any state or federal agency . . . ."); 29 C.F.R. § 1952.172(b)(4) (providing "The U.S. Department of Labor will continue to exercise authority, among

_____

[4] Section 6310 provides in part that:
(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: [¶] (1) Made any oral or written complaint to the [Division of Occupational Safety and Health], other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, . . . .

(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because such employee has made a bona fide oral or written complaint to the [Division of Occupational Safety and Health], other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

other things, with regard to: [¶] . . . . (4) Private contractors on Federal installations where the Federal agency claims exclusive Federal jurisdiction, challenges State jurisdiction and/or refuses entry to the State . . . .").  Since the responsible federal agency, the United States Air Force, allowed inspectors from Cal/OSHA to investigate the plaintiff's complaints regarding his termination from a civilian contractor operating on the federal enclave, the <u>Taylor</u> court concluded that the federal agency did not claim exclusive jurisdiction, and therefore California's occupational safety laws applied since the federal agency was not actively exercising its jurisdiction.  <u>See</u> <u>id.</u>

Plaintiff's FAC does not allege that the federal agency responsible for the federal enclave in which SONGS resides took any action indicating that it was not claiming exclusive jurisdiction or that it was not actively exercising its jurisdiction.  Therefore, the Court concludes that Plaintiff has failed to allege sufficient facts to support a claim under section 6310 or 6311 of California's Labor Code.  Accordingly, the Court grants without prejudice Defendant's motion to dismiss Plaintiff's claims pursuant to sections 6310 and 6311 of California's Labor Code.

Sections 6402, 6403, and 6404 of California's Labor Code were adopted by the California Legislature in 1973.  <u>See</u> Cal. Stats. 1973, ch. 993, § 96, p. 1939.  The statutes derive from very similar statutes codified in the same sections of California's Labor Code, however, that were adopted in 1937.  <u>See</u> Cal. Stats. 1937, ch. 90, §§ 6402-04, p. 309.  Since these laws were in effect at the time Camp Pendleton became a federal enclave in 1942, they were federalized and are not barred by the federal enclave doctrine.  <u>See</u> <u>James Stewart & Co.</u>, 309 U.S. at 99-100.  Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's claims pursuant to sections 6402, 6403, and 6404 of California's Labor based on the federal enclave doctrine.

**F.    Defendant's Other Arguments Regarding Plaintiff's Labor Code Claims**

**1.    Sections 6402, 6403, and 6404 of California's Labor Code**

Defendant argues that Plaintiff's claims under sections 6402, 6403, and 6404 of California's Labor Code should be dismissed because these statutes do not provide

private rights of action. Section 6402 states that "[n]o employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful." Section 6403 provides that an employer shall not fail or neglect to provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe, to adopt and use methods and processes reasonably adequate to render the employment and place of employment safe, and to do every other thing reasonably necessary to protect the life, safety, and health of employees. See Cal. Lab. Code § 6403. Section 6404 states that "[n]o employer shall occupy or maintain any place of employment that is not safe and healthful." These and similar requirements are sometimes referred to as the "general duties clauses." See California Correctional Supervisors Organization, Inc. v. Dept. of Corrections, 96 Cal. App. 4th 824, 830-31 (2002); see also Ming W. Chin et al., California Practice Guide: Employment Litigation ¶ 13:41 (The Rutter Group 2006). The general rule is that actions by an employee against an employer for workplace injuries are subject to workers' compensation exclusivity. See Chin, et al., supra, ¶ 13.42. Therefore, the Court concludes that there is no private right of action under sections 6402, 6403, or 6404 of California's Labor Code. Accordingly, the Court grants with prejudice Defendant's motion to dismiss Plaintiff's claims under these sections.

### 2.    Sections 98.6, 1102.5, 132a of California's Labor Code

Since the Court has previously granted Defendant's motion to dismiss Plaintiff's claims pursuant to sections 98.6, 1102.5, and 132a of California's Labor Code pursuant to the federal enclave doctrine, the Court declines to address Defendant's other arguments regarding these claims.

### G.    Negligent Supervision Claim

Defendant argues that Plaintiff's negligent supervision claim should be dismissed because it is barred by workers' compensation exclusivity provisions of California labor law. Plaintiff alleges that Defendant breached an owed duty by its failure to "advise" Plaintiff of unsafe working conditions, and to "obtain proper treatment and

accommodation following [Plaintiff's] injuries."  (FAC ¶ 62-69.)

Subject to limited exceptions, workers' compensation is the only remedy available to injured employees against an employer responsible for injuries "arising out of and in the course of employment."  See Cal. Lab. Code §§ 3600–3602, 5300; see also Chin et al., supra, ¶ 15:520.   "The exclusivity provisions encompass all injuries 'collateral to or derivative of' an injury compensable by the exclusive remedies of the Workers Compensation Act."  Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund, 24 Cal. 4th 800, 813 (2001).  An injury is compensable for exclusivity purposes if two conditions exist, the plaintiff is seeking to recover for an "industrial personal injury or death" sustained in and "arising out of and in the course and scope of employment," and the acts or motives giving rise to the injury constitute "a risk reasonably encompassed within the compensation bargain."  See id. at 813-814, 819-20.

Although disability discrimination claims are not preempted by workers' compensation law because disability discrimination falls outside the compensation bargain, see City of Moorpark v. Superior Ct., 18 Cal. 4th 1143, 1154–1155 (1998), Plaintiff's claim is for negligent supervision, not disability discrimination.  The Court concludes that Plaintiff's negligent supervision claim seeks to recover for an industrial personal injury sustained in and arising out of and in the course and scope of employment, and the acts and motives allegedly giving rise to the injury constitute a risk reasonably encompassed within the compensation bargain, and therefore is subject to workers' compensation exclusivity provisions.  Cf. Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co., 14 Cal. App. 4th 1595, 1605-06 (1993) (claim against employer for negligent supervision in connection with alleged sexual harassment and wrongful termination of employee is barred by workers' compensation exclusivity principle); Hine v. Dittrich, 228 Cal. App. 3d 59, 63 n.4 (1991) (stating that the exclusivity of the workers' compensation remedy might preclude a civil suit for negligent supervision of third party employees in some or all cases).  Accordingly, the Court grants with prejudice Defendant's motion to dismiss Plaintiff's negligent supervision claim.

**Conclusion**

For the reasons discussed, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's disability discrimination and retaliation claims to the extent that they are based on the ADA (claims two and three).  The Court **GRANTS WITH PREJUDICE** Defendant's motion to dismiss Plaintiff's claims for wrongful termination in violation of public policy (claim one), disability discrimination and retaliation to the extent that they are based on FEHA (claims two and three), violations of sections 98.6, 1102.5, 132a, 6402, 6403, and 6404 of California's Labor Code (claim four), negligent supervision (claim five), and intentional infliction of emotional distress (claim six).  The Court **GRANTS WITHOUT PREJUDICE** Defendant's motion to dismiss Plaintiff's disability discrimination claim under the Rehabilitation Act (claim two), and Plaintiff's claims for violations of sections 6310 and 6311 of California's Labor Code.  Plaintiff is granted  thirty days from the date this order is filed to file an amended complaint correcting the deficiencies of the claims dismissed without prejudice.

IT IS SO ORDERED.

DATED:  April 10, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.